IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   C.A. NO. 15-235M
                                       \*
DELINDA M. MARTINS                     \*
                                       \*
    VS.                                \*   SEPTEMBER 8, 2016
                                       \*   2:00 P.M.
FEDERAL HOUSING FINANCE                \*
AGENCY, et al                          \*
                                       \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   PROVIDENCE, RI


              BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,

                        DISTRICT JUDGE


                (Cross-Motions for Summary Judgment,
                        Motion to Dismiss)

APPEARANCES:

FOR THE PLAINTIFF:     STEVEN FISCHBACH, ESQ.
                       JEFFREY C. ANKROM, ESQ.
                       RI Legal Services, Inc.
                       Housing & Foreclosure Prevention
                       Unit
                       56 Pine Street, Suite 400
                       Providence, RI  02903

FOR THE DEFENDANTS:    MICHAEL A.F. JOHNSON, ESQ.
                       Arnold & Porter, LLP
                       555 12th Street NW
                       Washington, D.C.  20004

                       SAMUEL C. BODURTHA, ESQ.
                       Hinshaw & Culbertson LLP
                       321 South Main Street, Suite 301
                       Providence, RI  02903

Court Reporter:        Karen M. Wischnowsky, RPR-RMR-CRR
                       One Exchange Terrace
                       Providence, RI  02903

1    8 SEPTEMBER 2016 -- 2:00 P.M.

2        THE COURT:  Good afternoon, everyone.  We're

3    here this afternoon in the case of Delinda M. Martins

4    versus Federal Housing Finance Agency, et al, 15-235.

5        Would counsel identify themselves for the

6    record.

7        MR. ANKROM:  Attorney Jeffrey Ankrom for Delinda

8    Martins.

9        MR. FISCHBACH:  Attorney Steven Fischbach also

10    for the Plaintiff.

11        THE COURT:  Good afternoon, folks.

12        MR. JOHNSON:  Michael Johnson, Arnold & Porter.

13    I've been admitted pro hac vice for FHFA.

14        THE COURT:  Great.  Welcome.

15        MR. JOHNSON:  Thank you.

16        MR. BODURTHA:  Good afternoon, your Honor.  Sam

17    Bodurtha on behalf of Fannie Mae and FHFA.

18        THE COURT:  Welcome back, Mr. Bodurtha.

19        MR. BODURTHA:  Good to see you again.

20        THE COURT:  Let me apologize for not getting

21    back to you.  I realized I didn't get back to you as to

22    what order we'd take up the things because I'm not sure

23    there's a logical order to take them up in, and I tried

24    like the Dickens to figure out what the logical order

25    was to take them up and failed miserably.

1      So I think it makes sense, unless you folks have

2 thought otherwise, to start with the Defendant's motion

3 for summary judgment on the Counterclaim.

4      MR. BODURTHA:  I was actually talking with my

5 pro hac counsel, and we were considering whether the

6 motion to dismiss should be heard.  I leave it to the

7 Court's discretion, the reason being that we are of the

8 opinion that the actual act of filing the Counterclaim

9 moots the due process issue.  I don't know if that

10 impacts the Court's decision on the order that you want

11 to hear it.

12      THE COURT:  Well, if you want to take the motion

13 to dismiss up first, that's fine; but I think I

14 probably want to begin with the Plaintiffs and ask them

15 why I shouldn't grant the motion to dismiss in light of

16 the foreclosure reversal.

17      MR. ANKROM:  So we're starting with motion to

18 dismiss, then?

19      THE COURT:  Sure.

20      MR. ANKROM:  Okay.

21      MR. JOHNSON:  We're absolutely pleased to

22 proceed that way, your Honor.

23      THE COURT:  I mean, the papers are all made out

24 here; but they're all done, I believe, prior to this

25 consent agreement.  The motion to dismiss, I mean, was

1    prior to the consent agreement on the foreclosure.  So

2    I'm wondering in light of that what's left of your

3    affirmative claim.

4         MR. ANKROM:  I think quite a bit, your Honor.

5    Your Honor, the *County of Los Angeles v. Davis* states a

6    general rule that voluntary cessation of allegedly

7    unlawful conduct does not make a case moot unless, it

8    has a two-step analysis requiring both steps, unless

9    there's no reasonable expectation that the alleged

10   violation will recur and unless interim relief has

11   completely and irrevocable eradicated the effects of

12   the alleged violation.

13        I'm not sure that any of the parties' briefs on

14   these points were entirely clear.  I don't believe that

15   Fannie Mae has met either of those standards.  There's

16   a heavy burden on Fannie Mae to meet that, your Honor.

17        Your Honor, this case is not moot primarily for

18   two reasons.  Fannie Mae has not changed its official

19   policy of engaging in nonjudicial foreclosures in Rhode

20   Island.

21        THE COURT:  Right, but vis-à-vis Ms. Martins,

22   it's no longer a relevant issue.

23        MR. ANKROM:  Well, I believe it is.  And

24   taking a look at the First Circuit case of *DHL*

25   *Associates v. O'Gorman*, that's 199 F.3d at 50 at pages

1    54 to 55 -- I should recite the facts, your Honor.

2         DHL Associates was offering nude dancing at its

3    fine-dining establishment; but the City of

4    Tyngsborough, Mass., had a zoning policy that nude

5    dancing could only be offered in Zone B4, and that zone

6    didn't exist in the original zoning ordinance.

7         Shortly after litigation, Tyngsborough first

8    amended their zoning ordinance and made two lots that

9    were zoned B4, neither of which DHL Associates was

10   involved in; and then at the District Court's

11   suggestion, DHL (sic) expanded their zoning ordinance

12   and created the B4 zone over 10 acres of land, and the

13   Court -- the District Court held that that was

14   constitutional.

15        The First Circuit reviewed whether it was moot,

16   and they looked at two reasons.  First, DHL Associates

17   could not claim damages because the zoning ordinance

18   was never enforced against DHL and, secondly, DHL could

19   not bring a claim for declaratory judgment against a

20   zoning ordinance that was no longer in effect.

21        On both of those issues, though, Delinda

22   Martins' case is quite the opposite.  She was affected

23   by Fannie Mae's policy; her home was foreclosed on

24   nonjudicially without a hearing; and because the policy

25   is still in effect, she can bring the claim for

1    declaratory judgment against that policy.

2            She has a right based on her past injury to ask

3    the Court for a declaration that these -- that this

4    policy is violative of the Constitution.

5            There are many cases, I think, your Honor, that

6    make a distinction between whether the official policy

7    has been changed or not.  For example, the *Rhode Island*

8    *Association of Realtors v. Whitehouse*, a First Circuit

9    case, 199 F.3d 26, involved the constitutionality of a

10   Rhode Island statute that threatened criminal penalties

11   for the commercial use of public records.

12           In that case, the Attorney General, both the

13   past Attorney General when the case was brought and

14   then the current Attorney General, argued that because

15   they made certain representations during the litigation

16   that they would not prosecute the Rhode Island

17   Association of Realtors on the basis of that statute,

18   the use of public records, then they said the

19   Association of Realtors was not affected and that the

20   case was moot.

21           But the Court noted that the Attorney General's

22   universal policy regarding that statute had not been

23   changed, and so the Court allowed the case to proceed

24   to determine the constitutionality of the statute.

25           Similarly --

1      THE COURT:  But in this case what we have is

2  this position that you have on behalf of Ms. Martins

3  and have had on behalf of other clients as well and the

4  cases have gone away before they've been decided

5  concerning the status of Fannie Mae and their effect of

6  due process on that particular entity, and that issue

7  has never been adjudicated because the cases seem to

8  have settled and this one obviously hasn't, but your

9  position on that is that they're required to give

10  appropriate notice, however that would be defined under

11  due process because they're a government entity and,

12  therefore, I have to do it either by -- I suppose you'd

13  concede either by judicial foreclosure or by properly

14  noticed and fulfilling of all due process requirements

15  under a nonjudicial foreclosure; right?

16      And if that's the case, don't we need a real

17  case in controversy in facts to determine whether the

18  Defendants are proceeding consistent with due process

19  in the nonjudicial foreclosure area?  And we don't have

20  those here because we don't have a foreclosure to

21  analyze.

22      MR. ANKROM:  Well, I think because she was

23  actually foreclosed on, your Honor, she has a right to

24  seek the Court's determination, a declaratory judgment,

25  that that was, in a fact, unlawful.

1          Also, I think there may be lingering effects

2     from the prior foreclosure.  Fannie Mae has not met its

3     heavy burden to demonstrate that all of the effects of

4     the foreclosure are gone.

5          For example, there may be costs and expenses

6     that they claim she's contractually liable for that

7     prior foreclosure.  I'm not aware if those have been

8     taken off of her statement or not.  Fannie Mae has

9     certainly not made a representation to this Court.  I'm

10    not aware whether these -- the notation of foreclosure

11    was removed from her credit report.

12         But I'm sure if the Court rests on those issues,

13    they'll just stand up and say, Well, we'll change

14    those, your Honor.  And I think that's the difficulty

15    here, and that's what the Supreme Court was suggesting

16    in the *Knox v. SEIU* case, that Fannie Mae is using this

17    as a litigation strategy.

18         They're not admitting that what they did was

19    wrong.  In fact, they're continuing the practice of

20    nonjudicial foreclosure in Rhode Island.

21         In the past cases, they've done everything that

22    they could to avoid your Honor from reviewing this --

23    the constitutionality of their conduct.

24         THE COURT:  All to the benefit of your clients.

25         MR. ANKROM:  It has worked out well that way;

1   and maybe if your Honor denies mootness, it might make

2   it difficult.

3        THE COURT:  Mr. Ankrom, what I'm missing here is

4   that, and maybe I haven't delved back into it in a

5   while to the depth that I looked at it at one point

6   before you ended up settling it, and that is I did not

7   perceive your position to be that all nonjudicial

8   foreclosures would be unconstitutional if the Court

9   found that the due process requirements applied to

10  Fannie Mae but, rather, their actions would have to be

11  consistent with due process, if I believed your

12  argument and, therefore, nonjudicial foreclosures could

13  be done consistent with the Constitution.

14       MR. ANKROM:  I don't believe nonjudicial

15  foreclosures can be done consistent with the

16  Constitution.  The Constitution requires not only

17  notice but also a hearing, which they're not getting.

18       I don't think that necessarily means that they

19  need a judicial foreclosure.  They could perhaps set up

20  an administrative hearing.  But this is not just an

21  issue of this one foreclosure was done improperly.

22       This is an issue that Fannie Mae has an official

23  policy that all foreclosures in Rhode Island will be

24  done a certain way, and that way that they're requiring

25  all foreclosures to be done violates the Constitution.

1    So if Delinda Martins ever owns property again

2    in the future, which I think is foreseeable, and if

3    Fannie Mae is or Freddie Mac is the owner of that

4    mortgage, she will face the same possible foreclosure

5    procedures because this is the way Fannie does it --

6    Fannie Mae does it in every case.

7    And I think that's what distinguishes this case

8    from some of the invalid foreclosure cases my brother

9    cites; that this isn't a case of an individual error on

10   an individual foreclosure.  This is a case of a

11   universal policy that has not been changed.

12   Similarly, the *Knight v. Mills* case in the First

13   Circuit, 1987, where Mr. Knight claimed that the

14   Constitution required a psychiatric treatment program

15   while he was incarcerated, which the Court didn't --

16   well, didn't reach, the Court dismissed the claim for

17   damages because the officials had qualified immunity

18   and dismissed any declaratory injunctive relief against

19   these Defendants noting that he had received treatment.

20   This wasn't an issue of an official policy.

21   They were offering treatment to some people.  It's just

22   rather in his individual case he was not receiving the

23   treatment that he wanted.

24   And, in fact, in that case in Footnote 17 the

25   Court noted that the claim for declaratory relief would

continue against other Defendants that were not party
to the appeal.

Similarly, in *Preiser v. Newkirk*, which my
brother relies on regarding whether future harm is
speculative or too remote, the Court had already
entered declaratory judgment in that case based on the
past violation.

So I think all of these cases lead to the
conclusion that when there is a past violation based on
an official policy and that official policy has not
been changed, the Claimant still has the right to ask
the Court for a declaratory ruling on that past
official policy.

Similarly, the *County of Los Angeles v. Davis*,
the Court dismissed that case as moot because the
official policy had been changed.  The Court never
found a racially discriminatory intent; and the 1972
promotional exam that the Plaintiffs were complaining
about, the County of Los Angeles agreed that they would
never use.

So it wasn't just they promoted these one or two
individuals who sued but maintained that this 1972 test
would still be used.  No, they changed their policy.
They threw out the test completely.

So to just fix it for one individual who sues

1   but leave everybody else harmed is merely a litigation

2   strategy designed to avoid the Court from ever reaching

3   the ultimate issue.

4        And the Supreme Court has frowned on that, and

5   the First Circuit frowned on it in the *Rhode Island*

6   *Association of Realtors v. Whitehouse*.

7        THE COURT:  That Supreme Court case -- I think

8   it's a Supreme Court case relatively recently in the

9   class action context where one of those Courts, someone

10  above me, disallowed Defendants in a class action from

11  picking off Plaintiffs, representative Plaintiffs, to

12  moot an issue, and I think they allowed it to go

13  forward.  Is that an analogous legal concept?

14       MR. ANKROM:  I think that's analogous.  We

15  haven't brought a class action.  Unfortunately, Legal

16  Services is prohibited from bringing a class action;

17  but I think that's what's going on here, is that if

18  your Honor declares this to be moot, every case we

19  bring against Fannie Mae and Freddie Mac, they're going

20  to follow the same procedures that they did in this

21  case, which they've already done in some of the others.

22       They're going to rescind the nonjudicial

23  foreclosure voluntarily and then file a motion to

24  dismiss that the case is moot because they gave

25  everything we wanted.  They rescinded the nonjudicial

1  foreclosure -- I have "speak slowly" written at the top

2  of my page in bold letters just for your benefit.

3       THE COURT:  You need to look at it every so

4  often to make it effective.

5       MR. ANKROM:  That they will claim in each case

6  that because they rescinded the nonjudicial foreclosure

7  and apparently merely state an intention to pursue a

8  judicial foreclosure, that your Honor cannot look at

9  this issue.

10      And that's going to happen over and over again,

11 and Fannie Mae will continue with what we believe is

12 unconstitutional conduct, and we can't bring every

13 case.

14      THE COURT:  Let me hear from the Defendants on

15 the mootness issue because -- let me hear from the

16 defense on this issue.

17      MR. JOHNSON:  Thank you, your Honor.  The case

18 is moot.  I don't think there's any real dispute that

19 if the Plaintiff were bringing the case today, she

20 would lack standing.  The foreclosure has been undone.

21 There's nothing for the Court to decide here.

22      THE COURT:  Do you know whether the notation has

23 been taken off Ms. Martins' credit?

24      MR. JOHNSON:  If that had been in their brief, I

25 would have been more prepared to look into that.  It's

1  not something that was raised until a few minutes ago.

2  So I'm happy to follow up on my friend's comments, but

3  I don't know for sure.

4  I don't think it matters here because the key

5  element, as both parties focus on in the briefs, is

6  whether there is a reasonable expectation that the

7  challenged conduct can be repeated.

8  The challenged conduct in this case, according

9  to the four corners of the Complaint, is not some

10  policy and practice.  It's conduct that related to this

11  Plaintiff and this property.

12  If we look at the relief requested, it's undoing

13  this foreclosure.  It's protecting this Plaintiff's

14  purported due process rights.

15  Now, if we ever got to the merits, of course we

16  have plenty of arguments about that; but the challenged

17  conduct relates to this Plaintiff, and we know that the

18  challenged conduct won't be repeated because this

19  action isn't going to end.

20  This isn't a case where a Defendant tries to

21  stop the Court from looking at the relationship between

22  the Plaintiff and Defendant.  We've not only suggested,

23  not only committed to do a judicial foreclosure, but

24  we've done it, and we've pursued it to the point of

25  seeking a summary judgment from your Honor.

1        So the Court can be as assured as any Court

2    could possibly be that there will not be a repeat of

3    whatever supposedly might have gone wrong in the

4    nonjudicial foreclosure process.

5        And let me say it would be, in my view,

6    extremely difficult for the Plaintiff to try to broaden

7    the case because this really doesn't fit that kind of

8    pattern and practice paradigm because the Plaintiff did

9    get notice.  That's in Exhibit 14 to the Complaint.

10    The Plaintiff got a letter saying, Your home will be

11    foreclosed.

12        THE COURT:  The question is whether the notice

13    is adequate pursuant to paragraph 22 of the mortgage or

14    not, not whether the notice was received.

15        MR. JOHNSON:  I think it's really the adequacy

16    of the hearing process.  You know, this is a case about

17    specific facts, about whether -- there's clearly notice

18    of the foreclosure, whether the notice was perfect,

19    substantially compliant or otherwise, whether whatever

20    hearing process there may have been, and I know there

21    was a website and an 800 number provided in the notice,

22    I don't know, it's not alleged in the Complaint one way

23    or the other whether the Plaintiff actually tried to

24    raise any of these issues before the nonjudicial

25    happened, but whatever may have gone on there, those

1     just aren't things that I think could be generalized.

2         And there's certainly no allegations and there's

3     no request to declare anything, any policy or practice

4     wrongful.  It's all focused on this Plaintiff, this

5     property, this foreclosure, which has already been

6     undone.  So the case is moot.  It's very interesting

7     that --

8         THE COURT:  Actually, their first request is,

9     they request a declaration that Fannie Mae and FHFA's

10    use of nonjudicial foreclosure process in Rhode Island

11    or any foreclosure process, blah, blah, blah, violates

12    the Plaintiff's Fifth Amendment due process rights.

13        MR. JOHNSON:  The Plaintiff's Fifth Amendment

14    due process rights, and so it's tied to what happened

15    in this specific foreclosure.

16        And the allegation of what went wrong, again, is

17    she got notice, and it's something that happened after

18    the notice is where the allegations are.  So that, I

19    think, is just not something where the Court could say,

20    Look, based on something that happened after you got

21    notice, there's some policy or practice.

22        So this isn't what I would consider, if the

23    Court wants to put it into a paradigm that I think the

24    Court was sort of touching on and that my friend was

25    also alluding to a little bit, this isn't a facial

1    challenge.  This is more of an as-applied challenge.

2        And an as-applied challenge relates to specific

3    facts, specific circumstances, specific acts.  If those

4    are fixed, you don't get to continue to pursue your

5    as-applied challenge.

6        And it's interesting, there's a case that wasn't

7    cited in the briefs.  It's called *New England Regional*

8    *Council of Carpenters v. Kinton*.  It's a First Circuit

9    decision at 284 F.3d 9.

10        And in that case, the as-applied challenge was

11    ruled moot, but a facial challenge was ruled not moot;

12    and the same kind of dynamic was going on.  It wasn't

13    an ordinance.  It was a policy about leafletting.  And

14    the Plaintiff had leafletted in one location, but the

15    Defendant decided to allow them to go ahead and

16    continue, notwithstanding the fact that the policy

17    arguably prohibited it.

18        So the Court said, Well, look, you got to

19    leaflet in the location where you were doing it.  Your

20    as-applied challenge is moot, but you can make your

21    facial challenge to the statute or to the policy.

22        That's not what we have here.  We have only

23    claims relating to a single foreclosure.  And while my

24    friend wants to talk about employment practices cases

25    and nude dancing cases and whether criminal penalties

1    for misuse of public records cases have something to

2    tell us here, we don't really need to go there because

3    we've got plenty of law on the question before the

4    Court today whether the rescission of some portion of a

5    nonjudicial foreclosure process moots claims relating

6    to the nonjudicial foreclosure.

7         We've got the *Staton* case.  We've got the

8    *Vettrus* case.  We've got the *Sakagawa* case.  We've got

9    the *Tamburri* case.  There are others I could list that

10   aren't enumerated in the briefs; but these Courts all

11   look at this exact question, many of them in the

12   context of an assertion that, wait a minute, it's just

13   voluntary cessation.  It's just voluntary cessation, so

14   I should get to make my case about what went wrong with

15   the foreclosure.

16        Those Courts all say, No, you've gotten the

17   nonjudicial undone.  If something else happens,

18   something else goes wrong and you really shouldn't be

19   foreclosed upon at all, let's, by all means, have that

20   dispute.  Let's not say that you can't make that case,

21   but let's have it in the context of a live case or

22   controversy.

23        And I owe it to the Court to say I think this

24   really is an Article III issue, and they're asking for

25   an advisory opinion on a hypothetical state of facts

1     when they say, Well, maybe we'll buy a different

2     property and maybe there will be another nonjudicial

3     or, you know, maybe there's some other set of

4     circumstances that might come up in the future.

5         That's the exact analysis that the Courts went

6     through in *Staton* and *Sakagawa*, in *Vettrus* and in

7     *Tamburri*.  Those are all cases, by the way, where the

8     rescission happened while the case was pending.

9         So the notion that there's something wrong,

10     something sneaky or suspicious about trying to resolve

11     the elements that we can resolve and narrow the dispute

12     before the Court during the course of the litigation,

13     that's just totally contrary to the cases that are most

14     analogous to the facts here and that my friend

15     completely ignored in the briefing.  There's not one

16     word, one word about any of those cases in the entire

17     brief.

18         Now, the First Circuit has spoken to it, the *DHL*

19     case.  They say that the exception, voluntary

20     cessation, applies, however, only when there is a

21     reasonable expectation that the challenged conduct will

22     be repeated.

23         So certainly the statements about it being a

24     heavy burden are out there.  I agree with that.

25     There's a doctrine.  It's our burden.  I get that.  The

1    keyword is "reasonable expectation" here.

2        And I would also just note that my friend,

3 because I think he's so committed to his view of the

4 case, left that out entirely when reciting the standard

5 near the conclusion of his brief on page 7.

6        Instead of asking the Court to apply the real

7 standard, he said that it was our burden to show it was

8 absolutely clear that Plaintiff will never be subjected

9 to Defendant's purportedly unlawful conduct. That's

10 just not the standard.

11        And so what that shows is that, yes, there's a

12 doctrine and, yes, it sometimes applies; but it's very

13 easy to get drawn into thinking any time you can spin

14 out a very speculative course of events where somehow

15 some related conduct might take place, that's enough to

16 make a moot case live. Just because you can go through

17 that sort of thought process doesn't make it right.

18        THE COURT: What about their claim for damages?

19        MR. JOHNSON: I don't see one in their prayer

20 for relief. I see it in the caption of the Complaint.

21        THE COURT: It's in the caption, but it's also

22 at the end of -- at page 17 into 18, sub 4, for a

23 meaningful hearing prior to deprivation and opportunity

24 to recover damages if a foreclosure is deemed

25 erroneous.

1    MR. JOHNSON:  So that's a request for a PI and a

2  permanent injunction, and so this -- speaking

3  injunctive relief, there's also no allegations in the

4  Complaint that support any kind of damages.  There just

5  isn't a damages section in here.

6    So I don't see a damages claim, and there's not

7  a demand.  So I just don't think that's part of the

8  case right now.

9    This is a case where the Plaintiff asked to have

10  a nonjudicial foreclosure undone.  They've gotten that.

11  If they should be -- and they have, look, issues with

12  whether Fannie Mae can foreclose or not.  I get that.

13    This isn't going to end the case.  There is

14  going to be proceedings about whether the judicial

15  foreclosure can go forward.  Let's have that.  Let's

16  debate what's really in dispute and let perhaps another

17  case before your Honor or one of the many other cases

18  before other tribunals that have gone to judgment on

19  this issue -- there's some suggestion that Fannie Mae

20  never lets these cases go to judgment.  That's just a

21  -- a cursory search of West Law would show that's not

22  the case.

23    So let's let this case go forward on what's

24  really in dispute, not what's not in dispute.  And if

25  one of the other cases before your Honor or some case

1    yet to be brought raises issues that we can't resolve

2    amicably, so be it.

3         I also just -- you know, the suggestion that

4    this is a strategic litigation tactic is a little

5    different from the cases where that was a concern of

6    the Court.

7         It's a legitimate concern because there are

8    circumstances where a Defendant can sort of surprise

9    the Plaintiff and try to, you know, pull the rug out

10   without the Plaintiff's participation or assent.

11   That's not what happened here.  When we moved to

12   rescind the foreclosure, the Plaintiff assented.

13        THE COURT:  Why did you move to rescind the

14   foreclosure?

15        MR. JOHNSON:  Why?  Because we want to narrow

16   the dispute and present issues that really are in

17   dispute.  If we can focus --

18        THE COURT:  Do you acknowledge that the notice

19   was improper?

20        MR. JOHNSON:  No.

21        THE COURT:  Why would you rescind the thing if

22   it wasn't a litigation tactic?

23        MR. JOHNSON:  Because they have other issues

24   that we think are worthy of litigating, and we want to

25   focus --

1          THE COURT:  Like what?

2          MR. JOHNSON:  We want to focus the case on

3     what's really important.

4          THE COURT:  But you rescinded a foreclosure that

5     you spent money on, Mr. Johnson.  And it seems to me

6     that if Fannie Mae has made a decision to rescind the

7     foreclosure, they either did it because they're

8     acknowledging that the notice was improper, which we'll

9     get to when we hear the summary judgment motions, or

10    they're making a litigation strategic decision to take

11    an issue away from me that they don't want decided or

12    whatever other litigation matter would come down the

13    pike; but it's got to be one of those two.

14         MR. JOHNSON:  Look, I think that the way Fannie

15    Mae proceeds with all contested foreclosures is

16    inherently a case-specific analysis, and they are going

17    to look -- and, unfortunately, some of those things

18    don't percolate up.

19         THE COURT:  Mr. Johnson, what was the

20    case-specific analysis in this case that caused Fannie

21    Mae to undo a foreclosure?  Was it the notice?

22         MR. JOHNSON:  No.

23         THE COURT:  Then what was it?

24         MR. JOHNSON:  The course of the litigation, your

25    Honor.  We think that we want to litigate and get the

1 foreclosure resolved as quickly as we can, as certainly

2 as we can, without needing to litigate extraneous

3 issues.

4 The Plaintiff has other concerns here, and we

5 want to resolve those. Those are the things that we

6 think we can't really amicably resolve. We wouldn't

7 expect them to assent to some sort of judgment that

8 Fannie Mae was the mortgagee.

9 That seems to be one of their major concerns

10 here, is that the mortgage is recorded in a servicer's

11 name rather than in Fannie Mae's name.

12 That's something we can agree to disagree about.

13 We need to have that fight because we need to get over

14 that hump in order to complete the foreclosure or have

15 it be deemed that we can't complete the foreclosure.

16 We don't need to fight about the notice and the

17 nonjudicial foreclosure because we've got an option,

18 and we're trying to do that efficiently for the Court

19 and for Fannie Mae and for the Plaintiff.

20 THE COURT: We're going to argue over the notice

21 portion very shortly, in a matter of minutes. I

22 understand what your position is, but the Plaintiff's

23 position is that we'll go back to that.

24 So I'm going to take the motion to dismiss under

25 advisement. If I determine that the matter is moot,

1    you'll hear from me.  If I determine that the matter

2    isn't moot, I'm going to request further proceedings, I

3    don't know what they'll take, under the substantive

4    issue that underlies the matter.

5              MR. JOHNSON:  Thank you, your Honor.

6              MR. ANKROM:  Can I have a chance to respond to

7    some of the things, please.

8              THE COURT:  Sure.

9              MR. ANKROM:  Thank you.  I'll keep this brief.

10   I do agree with the *New England Regional Council of*

11   *Carpenters v. Kinton* case which my brother cited.

12   That's 284 F.3d 9.  It's a First Circuit case of 2002.

13             And, once again, the portion that was deemed to

14   be moot was because the Mass. Port Authority had

15   changed its official permit policy.  The portion that

16   was remanded for further proceedings was because they

17   changed their policy with regard to, I think it was,

18   Northern Avenue.  It was remanded as to whether they

19   had changed their policy with regard to other streets,

20   whether leafletting would be applied there.

21             THE COURT:  So that there was still, to use the

22   term, there was still a case in controversy as to them;

23   but here what Fannie Mae's position is is that

24   vis-à-vis Ms. Martins, that once the foreclosure was

25   rescinded, these matters are of no relevance to her

1    immediately.  It may be possible into the future, but

2    the Court doesn't give advisory opinions usually, ever.

3         MR. ANKROM:  Correct, but actually the NERCC had

4    not shown any intention to distribute leaflets on any

5    of these other streets.  So I'm not sure that there was

6    any immediate threat of any violations there.

7         But, again, I believe that Ms. Martins, since

8    she did suffer harm from the past action, has a right

9    to seek declaratory judgment.  That's what the *DHL*

10   *Associates* case said.  That's what *Knight v. Mills*

11   said.

12        I would point out in that regard that our

13   Complaint is not just seeking relief in regards to this

14   one foreclosure.  We mentioned the servicer alignment

15   initiative, a policy issued by Fannie Mae which we

16   cited also in our objection to their motion to dismiss,

17   we attached the Exhibit 1 to that, which is the policy

18   by which all foreclosures in Rhode Island should be

19   done through nonjudicial process.  So it's not just an

20   as-applied challenge like my brother says.  It is a

21   facial challenge.

22        I would note, though, if we prevail on the

23   summary judgment, I think that also would change the

24   moot analysis because if we prevail, then they can't

25   pursue the judicial foreclosure at this time.  I think

1    that should affect your Honor's considerations.  That's

2    all.  Thank you.

3           THE COURT:  Thanks.

4           Mr. Johnson or Mr. Bodurtha, who is going to

5    argue?  Mr. Bodurtha.

6           This is now the Defendant's motion for summary

7    judgment on its Counterclaim for judicial foreclosure

8    if I've got my map well read.

9           MR. BODURTHA:  Thank you, your Honor.  I

10   appreciate your following the map that I suggested.  I

11   know I threw a curve ball at you in that regard.

12          THE COURT:  You know, in retrospect, it made

13   perfect sense.  Thank you for that.

14          MR. BODURTHA:  Well, thank you for entertaining

15   the suggestion.

16          Your Honor, we've been talking about this issue,

17   the notice issue.  I'm not going to go into great

18   lengths in terms of the entirety of the summary

19   judgment motion.

20          In terms of the stated facts, there is

21   absolutely no dispute that Delinda Martins defaulted on

22   her mortgage.  She admits to that fact.  There's no

23   dispute that she currently owes over $300,000.  Delinda

24   Martins has not raised --

25          THE COURT REPORTER:  Could you please slow down.

1          MR. BODURTHA: I'm sorry. I should have

2    written on top of my note. I would steal Jeff's

3    notepad, but --

4          THE COURT: It wasn't very effective. Actually,

5    though, what you didn't see is that I got thrown the

6    glance, too, at one point.

7          MR. BODURTHA: Oh, so it was a response thing?

8          THE COURT: It fed on all of us. So I just

9    didn't want you all to think that you're alone in this

10    defect that we have in how we proceed. We all owe

11    Karen an apology.

12          MR. BODURTHA: I will talk as slowly as

13    possible. Feel free to glare at me if I speed up.

14          What is at issue in this summary judgment motion

15    and in response to our motion and the cross-motion is

16    whether the notice of default compliant with

17    paragraph 22 of the mortgage was delivered to the

18    borrower, Delinda Martins.

19          THE COURT: Well, doesn't it go beyond that?

20    Doesn't it go to whether the notice of default complies

21    with paragraph 22 under either a substantial compliance

22    or under a strict compliance analysis?

23          MR. BODURTHA: Yes.

24          THE COURT: Because I don't think, and maybe

25    they can correct me if I'm wrong, I don't think there's

1    any question about it being sent in and it being

2    received.

3        MR. ANKROM:  That's correct.  We're not raising

4    that issue.

5        THE COURT:  Right.  Just so that I'm clear as

6    well on this roadmap of this case that you all have put

7    before me, the Plaintiff -- one of the issues the

8    Plaintiff raised was who sent the notice.

9        MR. BODURTHA:  Correct.

10       THE COURT:  That came from the servicer, Green

11   Tree.

12       MR. BODURTHA:  It did.

13       THE COURT:  And during the conversation we

14   had --

15       MR. ANKROM:  Your Honor, we're going to drop the

16   issue of who sent the notice based on your case of the

17   252 Wolf Rock as well as William Smith's.  There are

18   other issues we'd like to address on this which are in

19   our brief.

20       THE COURT:  Great.  So I was going to say that's

21   not an issue at least vis-à-vis me because I've already

22   ruled that agents of the mortgagee could give the

23   proper notice pursuant to paragraph 22 and use of the

24   power of sale.

25       The question that I've got is even -- let's put

1    the standard aside, substantial versus strict.  The one

2    piece that seems to be missing, Mr. Bodurtha, and I

3    know there's a couple others Plaintiff raised, but the

4    one that I'd like you to talk about is the right to

5    bring a court action concerning default or any defense

6    because from what I understand between the parties is

7    that that provision of paragraph 22 of the mortgage,

8    you claim the Defendant's claim is satisfied by the

9    statement in the February 11th, 2014, notice from Green

10   Tree that says, "You may also have the right to assert

11   in the foreclosure proceeding the nonexistence of a

12   default or any other defense available to you."

13        Let me just ask, do I have that right that

14   that's one of the issues?

15        MR. BODURTHA:  That statement within that notice

16   of default that was issued to Ms. Martins was Green

17   Tree's compliance with paragraph 22's requirement that

18   the borrower be communicated that he or she has the

19   opportunity to initiate action in order to challenge

20   the validity or underlying defenses of the foreclosure,

21   and I'm paraphrasing paragraph 22.

22        THE COURT:  Sure.  How does it do that?  I guess

23   what I don't understand, and this is, I think, my

24   twelfth hundred mortgage foreclosure case --

25        MR. BODURTHA:  I'm just behind you in that

1    number.

2          THE COURT:  I was going to say, you've been at

3    many of them.

4          MR. BODURTHA:  I understand your position in

5    that regard.

6          THE COURT:  Paragraph 22 is a relatively

7    standard paragraph in mortgages; correct?

8          MR. BODURTHA:  It is, and it certainly lends

9    itself to how the servicer or the lender is to

10   communicate with the borrower in terms of the notice of

11   default and opportunity to cure.

12         THE COURT:  Sure.  So it seems like it's a

13   relative cut-and-paste possibility that could easily be

14   done to comply with your contractual obligation under

15   the mortgage at paragraph 22 to say what you've agreed

16   to say prior to acceleration.

17         It's not rocket science to say to the borrower

18   in this standard letter that a computer throws out that

19   they have, quote, "the right to bring a court action to

20   assert the nonexistence of a default or any other

21   defense a borrower to acceleration and sale."

22         Yet, you know, as I went through my checklist

23   going through this of what you're required to say under

24   22, and I know the Plaintiff will raise a few others,

25   but I -- oh, there it is, check; oh, there it is,

1  check; oh, there it is, check, on issues like the

2  action required to cure the default, the date not less

3  than 30 days.  I know there's a thirty-first-day issue

4  Plaintiff wanted to raise, but failure to cure can

5  result in acceleration, et cetera, et cetera.

6          And then I come to the court one and actually

7  gave it to my clerks and I said, I'm missing something

8  clearly.  Where is it in here?  And no one could come

9  up with it.  And then we went back and read the briefs

10  and found out what your position is.

11          But just at a practical level, why don't they

12  comply with the very simple language of paragraph 22?

13  I know you claim it's substantial compliance, but --

14          MR. BODURTHA:  Well, I do think they comply with

15  it.  Sorry.  I do think that they comply with the

16  provision, and they give the borrower in default the

17  opportunity to initiate court action, and that is

18  actually what happened in this case.

19          I can't answer for the Court the practicalities

20  of why a servicer is not just cutting and pasting.  I

21  don't think it's necessary in order to demonstrate

22  compliance with paragraph 22.

23          I don't think even if you look at the

24  Massachusetts SJC cases and the federal cases where

25  they're discussing strict compliance, which is not in

1     this jurisdiction, that those Courts have said in order

2     to strictly comply, you need to cut and paste this

3     provision within paragraph 22 into the statement.

4          The Courts in those jurisdictions where strict

5     compliance is available have looked at the totality of

6     the notice and interpreted that notice to decide

7     whether there is, in fact, compliance.

8          THE COURT:  So why, if you agree to tell the

9     borrower that they have a right to go to court, which

10    has a real vernacular meaning to all of us, it means

11    you have a right to go to court, therefore, go get

12    yourself a lawyer, is how I would read the notice

13    requirement, and that doesn't do it, why shouldn't I

14    guess that they don't want to do that because they

15    don't want people suing them and that it's a purposeful

16    action to avoid what they agreed to do, which is tell

17    people they've got a right to go to court to challenge

18    this and particularly in a nonjudicial foreclosure

19    state so far?

20         MR. BODURTHA:  Well, I wouldn't -- two responses

21    to that.  One is I wouldn't have the Court guess at it.

22    I don't think that there is any attempts to convince

23    borrowers or somehow skate around the requirements of

24    providing the notice of default.

25         I think that the exhibit that we're reviewing

1    and that particular notice of default gives or gave

2    Delinda Martins the information that she needed and

3    gave her those provisions under which she could raise

4    action.

5          THE COURT:  But, Mr. Bodurtha, what other

6    provision -- every box was checked almost word for word

7    of standard paragraph language 22 except the notice

8    that you have a right to go to court, a rather simple,

9    straightforward statement of a person's right; and

10    that's the one provision that's missing word for word,

11    whether I determine it's compliance or not, we'll make

12    that decision down the line, but that's the only

13    provision that there's not a check box done for.

14          And how can I not come to the reasonable

15    assumption that it's a purposeful action on the part of

16    the mortgagee in these kind of instances not to let

17    people know they've got a right to go to court when

18    they agreed to tell people they had a right to go to

19    court in these kind of situations?

20          And if that is the case, if I can assume that

21    it's a purposeful action on behalf of the mortgagee,

22    how is that not substantial or nonsubstantial

23    compliance?

24          MR. BODURTHA:  I don't believe there's any

25    evidence before the Court of a purposeful attempt made

1  by Fannie Mae in order to somehow not communicate that

2  information to the borrower, and I also believe that

3  the borrower as a signatory and a party to the mortgage

4  agreement certainly has paragraph 22 at her reach and

5  understands under paragraph 22 that she does have the

6  right to bring a court action.

7        THE COURT:  Well, she also understands that

8  you're going to give her notice of that.

9        MR. BODURTHA:  And I believe and it's our

10  argument that she received that notice.  If she truly

11  thought that she did not have the opportunity to bring

12  a court action, I'm not sure we would be here.

13        And if she received her notice and was somehow

14  confused by it, certainly the mortgage agreement itself

15  within paragraph 22 would give her the comfort and

16  confidence in knowing that she does have the right to

17  bring a court action in response of a notice of default

18  and right to cure.

19        THE COURT:  What does this sentence mean, you

20  may also have the right, not that you do, but you may

21  also have the right to assert in the foreclosure

22  proceeding?  What proceeding?  Where are they going to

23  assert what?

24        MR. BODURTHA:  Well, actually, I think that that

25  is an accurate statement of what happens in this

1     jurisdiction.  It is the fact that you can have a

2     foreclosure proceeding that's a judicial foreclosure or

3     a nonjudicial foreclosure.

4         Even in the event of a nonjudicial foreclosure,

5     I would still argue to this Court that there is a

6     proceeding.  There's notices that have to be issued,

7     there's filings within newspapers, and there's an

8     auction that takes place on your front lawn.

9         THE COURT:  None of which involves a court.

10         MR. BODURTHA:  I understand that.  And Fannie

11     Mae, as well as other lenders and servicers and agents,

12     have the ability to -- in this jurisdiction to initiate

13     foreclosure under the power of sale.

14         We've discussed that numerous times; and you've

15     had lawyers in front of you who have said, Your Honor,

16     they ought to just proceed judicially; and you've said,

17     They don't have to, though.  I'm not the legislature.

18     They have that opportunity.

19         So if you actually consider what that sentence

20     says, it's accurate.  You have the right to assert in a

21     foreclosure proceeding the nonexistence of the default.

22     The borrower has that right.

23         That issue actually is not in this case because

24     she's not challenging the default, but she has filed

25     suit against her servicer and her lender challenging

1    the foreclosure proceeding.

2          So, to me, and I understand the point the Court

3    is making, but I think that when you look at the notice

4    as a whole, when you look at the mortgage agreement,

5    both of which were available to her, certainly that

6    opportunity was communicated to her and she took

7    advantage of that opportunity in an effort to halt this

8    foreclosure.

9          THE COURT:  You're saying in many respects it's

10   substantial compliance with paragraph 22 because

11   Ms. Martins did exactly that which we were required to

12   tell her she had the right to do and that, therefore,

13   reading of the notice worked.

14         MR. BODURTHA:  It's difficult not to argue

15   substantial compliance when we're on the opposite ends

16   of a lawsuit that challenges the foreclosure itself.

17         Even if you went into the strict compliance

18   jurisdictions, the same result happens.  We have a

19   lawsuit that emanates out of the foreclosure.  We have

20   a borrower that wants this Court to apply Massachusetts

21   law and rule that this notice is not sufficient.

22         The notice was given to her.  The totality of a

23   judicial foreclosure and what we're here for today is

24   to demonstrate that the notice of default was given to

25   the borrower and that she has had the opportunity to

1  come into court in response to a complaint to foreclose

2  and to raise any of these issues that she may have.

3      And this is where I differ with my brother on

4  the applicability of this law.  How is it that we can

5  take strict compliance cases, cases that emanate from

6  the power-of-sale foreclosure, cases where the

7  Massachusetts Supreme Judicial Court starts off in the

8  *Pinti* decision and says, We've got an issue here in

9  Massachusetts, we've got lenders that are foreclosing

10  under the power of sale, these people don't have the

11  opportunity to come into court and because of that,

12  under our power-of-sale statute and because the

13  power-of-sale statute demonstrates or requires

14  compliance with the mortgage, we're going to make that

15  strict compliance?

16      Now we come down here into this case, we're

17  sitting in a judicial foreclosure.  We're not

18  foreclosing by notice.  We're not giving her the

19  opportunity to come to the front lawn and witness an

20  auction within weeks of having that notice of sale.

21      We filed a Counterclaim lawsuit against the

22  borrower in order to proceed on a judicial foreclosure.

23  The question for the Court is, under paragraph 22, did

24  the borrower receive those notices, has she received

25  those notices before we are in front of this Court

1 demanding that we be given judicial authorization to

2 foreclose.

3   You cannot take the power-of-sale foreclosure

4 decisions and simply apply them down here.  You don't

5 have the same policies behind it.  I know my brother

6 argues, well, strict compliance, I mean, it's in

7 Massachusetts.  It's in other jurisdictions.

8   I have not seen a case in this jurisdiction, nor

9 do I think there is a case, that is similar to these

10 circumstances where you have a judicial foreclosure

11 that is taking place and the borrower has filed an

12 affirmative piece of litigation and the borrower is

13 somehow demanding and informing this Court that she

14 didn't get all of this information.

15   All of the information has been communicated to

16 her.  And, more importantly, when she comes into this

17 court and files lawsuit and says, I want notice and an

18 opportunity to be heard, I'm challenging this

19 foreclosure, that's exactly what we gave her.

20   We filed a Counterclaim.  We've requested that

21 the Court review the foreclosure, the notices, whether

22 she was in default, whether the notice -- whether there

23 was compliance with this mortgage agreement.  We've

24 given the Court the evidence that would demonstrate

25 that.

1     The question is not simply whether a notice went

2     out before a power-of-sale foreclosure, which is what

3     the SJC dealt with in *Pinti* and what this Court and

4     other Courts in our jurisdiction deal with week in and

5     week out with these power-of-sale foreclosures.

6     This is a different kind of situation.  This is

7     a situation where we're before the Court on a judicial;

8     and under those circumstances, I have great difficulty

9     in applying those other cases and demanding the strict

10    compliance when the basis of those other cases and the

11    demand for that kind of compliance is the concerns over

12    a power-of-sale foreclosure.

13    If we remove all those concerns and we take this

14    as substantial compliance, we ask is she in default?

15    Yes.  Has she failed to cure?  Yes.  Was she given

16    notice of default and her right to cure?  Yes.  Did

17    that timeframe pass?  Yes.

18    Was she given notice that she has the right to

19    assert in a foreclosure proceeding the nonexistence of

20    a default?  She was given that notice.

21    Does she have the mortgage agreement in front of

22    her?  It's hers.  Does it tell her that she could file

23    a court action in order to challenge the validity?  It

24    does.  Did she file that court action?  She did.

25    Under all of those circumstances, that's the

1  precursor under paragraph 22 to Fannie Mae coming into

2  court and saying, I've complied, I want a court order

3  that I can proceed with foreclosure.

4        THE COURT:  Thanks, Mr. Bodurtha.

5        Mr. Ankrom.

6        MR. ANKROM:  Your Honor, I think a lot of your

7  questions, a lot of your reasoning are similar

8  questions to what Judge Finkle raised in the *In re:*

9  *Demers* case in Bankruptcy Court here in Rhode Island.

10       My brother has not addressed *In re: Demers* in

11  any of his briefs, and he seems to be avoiding that

12  case.

13       THE COURT REPORTER:  Could you please slow down.

14       MR. ANKROM:  That was about a minute in.  I

15  didn't make it very far.

16       THE COURT:  No, Karen's just getting bolder.

17       MR. ANKROM:  Your Honor, in that case, again,

18  the notice did not say the borrower had the right to

19  bring a court action.  It said you have the right to

20  argue that you did not default on your mortgage, and

21  Judge Finkle asked the person the question that you

22  asked, too:  Argue to whom?  To the lender?

23       My brother says that there is foreclosure

24  proceedings even without Court intervention.  And then,

25  again, who would the borrower argue to?  The

1    auctioneer?  That's not going to go very far.

2         THE COURT:  But what Mr. Bodurtha argues,

3    amongst many things, is that when the judicial

4    foreclosure route is gone, that we're in court, and

5    whatever protection the borrower gets from being in

6    court they're going to get from being in court under a

7    judicial foreclosure process; and, therefore, the -- I

8    refer to it internally as the sixth requirement, but

9    that's just because of my little checklist of

10   paragraph 22.  I don't know why they said you have to

11   say A, B, C -- 1, 2, 3 and 4 and then you also have to

12   say these other two things and don't give them numbers,

13   but anyway, the sixth requirement of the notice on your

14   right to go to court is meaningless in a judicial

15   foreclosure setting and, therefore, they've

16   substantially complied with paragraph 22 because we're

17   in court.

18        MR. ANKROM:  Well, no Courts have held that,

19   your Honor.  I know they've asserted it.

20        THE COURT:  Well, why wouldn't they?  Why isn't

21   that logic, Mr. Ankrom?  Why doesn't that logic make

22   sense if this Court -- let's forget the standard,

23   whether it's strict or substantial.

24        Let's just say why isn't that logic that that

25   section of paragraph 22 in a judicial foreclosure

1  setting a meaningless enough provision that compliance

2  with all the others equals substantial or even strict

3  compliance?

4       MR. ANKROM:  Because, as Judge Finkle has

5  stated, this is a condition precedent to the valid

6  exercise of foreclosure.

7       In fact, the express language of paragraph 22

8  says that the lender must comply with paragraph 22

9  before exercising the power of sale or any other

10  available remedies at law.

11       The judicial foreclosure statute, 34-27-1, says

12  that any person entitled to foreclose may proceed by

13  court action.

14       Until they have complied with paragraph 22, they

15  are not entitled to foreclose. *Bucci v. Lehman*

16  *Brothers Bank*, the Rhode Island Supreme Court says the

17  power of sale does not exist apart from the terms of

18  the contract.  They simply don't have the right to

19  accelerate the debt and to foreclose until they have

20  complied with paragraph 22.

21       *USA Residential Properties v. DiLibero*, Justice

22  Rubine of the Superior Court says that the mortgagee

23  must comply with both statutory and contractual

24  requirements.

25       Your Honor, I have cited in my brief numerous

1    judicial foreclosure states that require compliance

2    with paragraph 22. Not all of them say whether it's

3    strict or substantial. That's not the issue.

4           THE COURT: And none of them, from my read of

5    them, and the ones that I went on and read in full

6    talked about this particular provision, the

7    going-to-court provision, which is, in essence, one of

8    Mr. Bodurtha's more powerful arguments that that

9    particular provision in this particular instance is

10    different than would be all the others because we're

11    here. We're in court --

12           MR. ANKROM: But that's just --

13           THE COURT: -- in a judicial foreclosure setting

14    that gives all of the rights that that subsection 6 of

15    paragraph 22 would have otherwise given to the

16    borrower.

17           MR. ANKROM: But that's just not -- that's not

18    what paragraph 22 says. That's not the analysis that

19    cases have taken.

20           The question is whether the lender has complied

21    with paragraph 22, whether they have satisfied a

22    condition precedent to the exercise of foreclosure or

23    any other remedies at law; and in this case they have

24    not because they did not use the correct language, they

25    did not advise the borrowers of the correct rights.

1        So I guess my brother is saying that when they

2    "oops" and they give the wrong notice, can they now

3    correct it by bringing a court action?  There are no

4    cases that say that.  That is not what paragraph 22

5    says.  Paragraph 22 says the borrower must be advised

6    of her right to bring a court action.

7        And just like Fannie Mae does not want your

8    Honor to assume that they gave the wrong notice in an

9    effort to trick the borrowers, I would argue that your

10   Honor should not assume the borrowers have the mortgage

11   readily available.

12       Many people don't.  Many people don't know how

13   to read the mortgage, many lawyers don't know how to

14   read the mortgage, and would not be able to search

15   through paragraph -- page 9 or 10 of the mortgage to

16   find paragraph 22 to say, Oh, I guess I do have a right

17   to bring a court action.  I didn't know that.  That's

18   just not the way many cases go.

19       Your Honor, my brother says that they don't need

20   to cut and paste, and they may be correct.  If they're

21   using the language your Honor says, "the right to go to

22   court," that would probably be sufficient; but there's

23   a big difference between the right to go to court and

24   the right to bring a foreclosure proceeding.  Just like

25   Judge Finkle said, it does not advise regarding the

1    right to bring a court action.

2           THE COURT:  Actually, the notice doesn't -- I

3    think if the notice said you have a right to bring a

4    foreclosure proceeding, maybe that would be a little

5    different.

6           It doesn't say that.  It says you may have a

7    right to assert in a foreclosure proceeding, nothing

8    about the borrower's affirmative right to bring an

9    action.

10          MR. ANKROM:  Correct, which it seems that my

11   brother was even confused.  It says the foreclosure

12   proceeding must mean the auctioneer going out in the

13   front lawn and so now the borrower has the right to

14   assert during that auctioneer proceeding about

15   defenses.  Wait a minute.

16          THE COURT:  I think his interpretation is a

17   proceeding can reasonably be read to mean process, the

18   foreclosure process, which has various steps that are

19   very similar to a proceeding.

20          MR. ANKROM:  So I do believe strict -- a strict

21   compliance standard should be applied in Rhode Island.

22   That is not a unique issue of Massachusetts law.  I did

23   cite to other jurisdictions that have a strict

24   compliance standard, and I believe Rhode Island would

25   as well both with the language in *Bucci v. Lehman*

1 *Brothers Bank* that the power of sale does not exist

2 apart from the conditions in the contract as well as an

3 analysis of Rhode Island law.

4 I cite to *Headco v. Blanchette*, which required

5 strict compliance with the notice requirements of a

6 lease before the lease could be terminated, as well as

7 another case that I'm searching for, *Capuano v. Kemper*

8 *Insurance Company*, which required strict compliance

9 with insurance policy before notice of cancellation can

10 be sent.

11 Your Honor, I think this is pretty universal now

12 in Rhode Island. When there's a condition precedent to

13 terminating a person's rights under the contract,

14 strict compliance is required.

15 I would argue that the February 11th, 2014,

16 notice is the closest. Whether that notice or all the

17 others fail in three points, the one your Honor has

18 mentioned I think is the strongest and the clearest,

19 that it does not advise of the right to bring a court

20 action.

21 Secondly, it does not advise of the right to

22 reinstate after default. Instead it says, let me find

23 it, Please review your mortgage or deed of trust for

24 any right you may have to reinstate your account after

25 acceleration, and it goes on, earlier to the prior of

1    five days before the sale of property or, B, entry of

2    judgment in force and security agreement.

3        This is very confusing language.  I don't think

4    this really advises a borrower of what they must do.

5    It doesn't say that she has the right to reinstate

6    after acceleration.

7        It says look for one of two documents, one of

8    which doesn't exist, read them for yourself and

9    determine for yourself whether you have any right to

10   reinstate.

11       There is no deed of trust here, your Honor.  I

12   think we can -- we cannot assume that all borrowers

13   have their mortgage readily available or even if they

14   know how to go get it at the town hall.  And that is

15   why paragraph 22 says not they should be told check

16   your mortgage to see what your rights are but, rather,

17   you do have the right to reinstate after acceleration.

18   This language is just confusing, and it doesn't advise

19   regarding the rights.

20       And, thirdly, your Honor, paragraph 22 requires

21   the lender to specify a date not less than 30 days from

22   the date the notice was given to the borrower by which

23   default must be cured.

24       This notice says within 30 days from the date of

25   this notice, you may cure your default.  There are two

1   problems with that.  First, *Headco v. Blanchette*

2   addressed this similar language.  It defined "specify."

3   "Specify notice" means you must give a calendar date,

4   not that was 10 days from the date of this notice.  It

5   doesn't require someone to read the notice and

6   calculate how many days.  It says you must specify a

7   date, give an exact date.

8          And also I think based on the *Frey* case that I

9   cited in my brief, within 30 days of this notice is

10  actually one day less than what is required because

11  *Frey* says "within" includes the date the notice is

12  sent.  So within 30 days is the date the notice is sent

13  plus 29 days more for a 30-day total period whereas

14  paragraph 22 says a date not less than 30 days from the

15  date the notice is given, which is the date of this

16  notice and 30 more days, for a total period of at least

17  31.  So we're one day shy, and we did not specify the

18  exact date.

19         Your Honor, this notice simply does not comply

20  with paragraph 22.  The lender has not exercised a

21  condition precedent; and as your Honor said a couple

22  times, it's not that hard to do so.

23         They fully have the power of changing their

24  computerized form and sending it out.  They have the

25  mortgage in their computer system.  They know what it

1    says.  They can send this out.  They didn't do so.

2    They should not be permitted to foreclose.  Thank you.

3         THE COURT:  Mr. Bodurtha, do you want to reply?

4         MR. BODURTHA:  Yes, your Honor.  Thank you.  I

5    didn't raise *In re: Demers*.  I didn't because it's a

6    power-of-sale foreclosure.

7         I understand what Judge Finkle's point is, but I

8    would rely upon the argument I made to you before,

9    which is we're not dealing with a power-of-sale

10   foreclosure right now so we can't take the decisions

11   that have been issued in connection with a

12   power-of-sale foreclosure and apply them to a judicial

13   foreclosure.

14        In terms of the *Headco* case, *Headco v.*

15   *Blanchette*, at least my understanding of it is dealing

16   with a notice of tenancy termination.  You're in a

17   landlord-tenant situation.  I've spent way too much

18   time in the Sixth Division District Court on this very

19   same issue.

20        And as much as I hate that 30-day notice and my

21   local counsel sending it out on a Friday and it doesn't

22   show up until whatever day, there is a different

23   concern than we have here.

24        The concern is, it's saying you've got 30 days

25   to move your stuff out of your house; and if you don't

move your stuff out of your house, we're going to file a summary process action against you, and then we're going to forcibly remove you from your house.

This is not the same kind of scenario here. This is a scenario where we say you're in default. Here is the amount of money you're in default. You have 30 days to cure. If you don't cure within those 30 days, your loan will be accelerated and foreclosure may occur.

It is a notice given under the terms of the mortgage to allow the borrower to reinstate. This particular notice alerted her of the fact that she owed over $90,000 and she needed to cure that default within 30 days to avoid acceleration and foreclosure. This is not a notice of termination. This is not information telling her you're going to have to leave.

I think that I can understand what my brother is arguing about strict compliance, but I don't think that the *Bucci* decision says that. Just because a Court says it's a condition precedent, that does not require strict compliance.

And my concern with adopting the strict compliance is we're taking the *Pinti* decision and we're bringing it to Rhode Island. The *Pinti* decision is a power-of-sale foreclosure.

1      In addition, and you and I have actually

2 discussed this almost three years ago to the day, what

3 is the difference between the Massachusetts

4 power-of-sale statute and the Rhode Island

5 power-of-sale statute.

6      And I was sitting over in that chair wanting to

7 get up and kick and scream because some of my

8 colleagues said, Gee, your Honor, I'm not entirely

9 sure.

10      I can tell you the power-of-sale statute in

11 Massachusetts says first comply with the mortgage.  And

12 from that decision and from the *Ibanez* case, which is

13 another Mass. SJC case, the Massachusetts Supreme

14 Judicial Court in *Pinti* determined that there had to be

15 strict compliance in a power-of-sale foreclosure.  And

16 the problem in that specific case was whether there was

17 a right to bring court action.  That's what the *Pinti*

18 case develops out of.

19      This case is a judicial foreclosure.  We don't

20 have that same kind of concern.  We don't have that

21 same reason to come down to Rhode Island and apply it,

22 especially given that we're dealing with a judicial

23 but, more importantly, because nowhere in the Rhode

24 Island power-of-sale statute, and your Honor has

25 pointed this out in the *Wolf Rock* case and so has Judge

1    Smith, those two statutes are not the same.

2        We're not going to apply Massachusetts law, and

3    we can't take that strict compliance decision from

4    *Pinti* and simply superimpose it upon the power-of-sale

5    statute here because the basis for that decision, 183

6    Section 21 in Massachusetts, you don't have that down

7    here.

8        Unfortunately or fortunately, however you look

9    at it, nothing within that statute in Rhode Island says

10    you must first comply.

11        Everything that Mr. Ankrom has cited to in terms

12    of contested foreclosure actions to say give us strict

13    compliance, give us strict compliance, the foundation

14    for each of those cases is a power-of-sale foreclosure.

15    It is not a judicial foreclosure. And for that reason

16    alone, substantial compliance and what we did suffice.

17        THE COURT: Thanks. We might get direction on

18    *Wolf Rock*. I saw the other day that that's been

19    appealed.

20        MR. BODURTHA: I can report to the Court it's

21    going to mediation. I'm very hopeful it will settle.

22    I have my doubts, though.

23        THE COURT: Good luck.

24        Mr. Ankrom, did you want to respond because you

25    both had sort of cross-motions for summary judgment?

1    MR. ANKROM:  Thank you.  My brother said earlier

2   that Massachusetts apparently has a power-of-sale

3   statute but doesn't -- how do I say this?

4   Massachusetts also has judicial foreclosure just like

5   Rhode Island.  Just like Rhode Island, lenders can pick

6   and choose what method of foreclosure.

7    And so when *Pinti* led off by saying we have

8   numerous nonjudicial foreclosures in this state where

9   borrowers are not going to court and having an

10   opportunity to present their defenses, that's the same

11   issues we have in Rhode Island.

12    And *Pinti* does rely on the Massachusetts

13   statute.  I understand that.  But *Pinti* also relies on

14   common law.  And, in fact, *Bucci*, the Rhode Island

15   Supreme Court, refers to numerous Massachusetts common

16   law cases and First Circuit cases addressing

17   Massachusetts common law.

18    I don't think the states are that different.

19   And, in fact, my brother makes a big deal that

20   Massachusetts power-of-sale statute says you must

21   comply with the mortgage.  Rhode Island Courts have

22   said you must comply with the mortgage.

23    In both *Bucci* and in *USA Residential*

24   *Properties v. DiLibero*, it's dicta because judge --

25   Justice Rubine held that the notice did comply without

much analysis, but he says that before foreclosing, a lender must comply with both the statutory requirements as well as the requirements in the mortgage contract.

So that's exactly what *Pinti* says.  I don't see any reason for these two states that are so close together and have such similar bodies of law to deviate dramatically on this one point like my brother is asking.

Your Honor, I would argue *Headco* has very similar policy interests.  Both address the notice, that is, the first step in terminating a property right.  In these cases, the notice of default, first step in commencing foreclosure to take away someone -- forever take away someone's interest in their home; and *Headco*, first step to terminate a lease and forever take away their right to possess property.

I don't think I have anything further than that. Thank you, your Honor.

THE COURT:  Thanks, folks.  I'm going to take all the motions under advisement, and you'll hear from me in due course.  Thanks, folks.

(Adjourned)

1                   C E R T I F I C A T I O N

2

3

4          I, Karen M. Wischnowsky, RPR-RMR-CRR, do

5    hereby certify that the foregoing pages are a true and

6    accurate transcription of my stenographic notes in the

7    above-entitled case.

8

9               ___December 29, 2016_____

10              Date

11

12

13              /s/ Karen M. Wischnowsky_____

14              Karen M. Wischnowsky, RPR-RMR-CRR
                Federal Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25